J-A11019-19

2019 PA Super 331

| | | |
|---|---|---|
| BARBARA LINDE, IN HER OWN RIGHT AND BARBARA LINDE ON BEHALF OF LINDE CORPORATION | : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : : | |
| SCOTT LINDE, ROBERT L. HESSLING, ROBERT M. MCGRAW, PAUL FEDOR, CHRISTOPHER LANGEL, ALFRED OSTROSKI, MICHAEL BOCHNOVICH, LINDE CORPORATION AND SCOTT LINDE FAMILY'S CORPORATION TRUST | : : : : : : : : : | No. 1392 MDA 2018 |
| Appellants | : | |

Appeal from the Order Entered July 20, 2018
In the Court of Common Pleas of Luzerne County Civil Division at No(s):
2013 CV 11028

BEFORE: BOWES, J., OLSON, J., and STABILE, J.

OPINION BY OLSON, J.: **FILED NOVEMBER 01, 2019**

Appellants, Scott Linde, Robert L. Hessling, Robert M. McGraw, Paul Fedor, Christopher Langel, Alfred Ostroski, Michael Bochnovich, Linde Corporation, and Scott Linde Family's Corporation Trust, appeal from the trial court's order entered on July 20, 2018.[1] We vacate and remand.

---

[1] On March 27, 2014, the trial court sustained defendant Linde Corporation's preliminary objections to the complaint and struck the claims against the corporation. Trial Court Order, 3/27/14, at 1. This determination has not been challenged on appeal.

On September 18, 2013, Barbara Linde (hereinafter "Barbara"), individually and on behalf of Linde Corporation (hereinafter "LindeCo"), filed a complaint against Appellants. The case proceeded to a bench trial, after which the trial court found in Barbara's favor on many of her claims and ruled that Barbara was entitled to an equitable remedy in which Appellants were to purchase her minority interest in LindeCo at fair value. Trial Court Order, 11/13/15, at 1-2. The trial court then convened a second proceeding aimed at determining the fair value of Barbara's shares. On December 28, 2017, the trial court entered its decision in the matter, ruling that Barbara's shares had a fair value of $4,433,000.00 and that Barbara was entitled to $959,000.00 in interest, for a total award of $5,392,000.00. Trial Court Order, 12/28/17, at 1.

On January 8, 2018, Appellants filed a timely post-trial motion. **See** Appellants' Motion for Post Trial Relief, 1/8/18, at 1-11. Eleven days later, and while Appellants' post-trial motion remained pending before the trial court, Barbara prematurely filed a *praecipe* to enter judgment with the Luzerne County clerk of courts. Barbara's *Praecipe* to Enter Judgment, 1/19/18, at 1; **see also** Pa.R.C.P. 227.4(1)(b). On January 19, 2018, the clerk of courts erroneously entered judgment against Appellants; that day, Barbara filed a *praecipe* for writ of execution against Appellants and various third-party entities as garnishees. **See** Entry of Judgment, 1/19/18, at 1; *Praecipe* for Writ of Execution, 1/19/18, at 1.

The January 19, 2018 entry of judgment was beyond the clerk of court's authority and, thus, void. In relevant part, Pennsylvania Rule of Civil Procedure 227.4(1) declares:

> . . . the prothonotary shall, upon *praecipe* of a party:
>
> > (1) enter judgment upon . . . the decision of a judge following a trial without jury, if
> >
> > > (a) no timely post-trial motion is filed; or
> > >
> > > (b) one or more timely post-trial motions are filed and the court does not enter an order disposing of all motions within one hundred twenty days after the filing of the first motion. . . .

Pa.R.C.P. 227.4(1).

Here, Appellants' timely post-trial motion was still outstanding and the 120-day time-period specified in Rule 227.4(1)(b) had not expired when the clerk of courts purported to enter judgment on January 19, 2018. Therefore, the clerk of courts had no authority to enter judgment on January 19, 2018 and the judgment entered that day was void, a nullity, and lacking in legal effect. *Gotwalt v. Dellinger*, 577 A.2d 623, 624-625 (Pa. Super. 1990) ("[d]ue to the prothonotary's purely ministerial status, the authority for [its] actions derive from either statute or rule of court. . . . [W]here it is established that the prothonotary has entered judgment against a party beyond [its] authority, such action is considered void and the judgment entered by [it] is a nullity and lacks legal effect"); *see also Comm. ex rel. Penland v. Ashe*, 19 A.2d 464, 466 (Pa. 1941) (a void judgment is "no judgment at all");

- 3 -

*Romberger v. Romberger*, 139 A. 159, 160 (Pa. 1927) ("it is the duty of the court of its own motion to strike off [a void judgment] whenever its attention is called to it").[2]

Notwithstanding the void judgment, Barbara immediately began to engage in discovery in aid of execution. *But see* Pa.R.C.P. 3117(a) (providing that a plaintiff may engage in discovery in aid of execution at "any time **after judgment**") (emphasis added). Specifically, in January and February 2018, Barbara served upon Appellants "Interrogatories in Aid of Execution" and "Post-Judgment Requests for Production of Documents." Appellants did not respond to the interrogatories or document requests and, on March 15, 2018, Barbara filed a "Motion to Compel Responses to Discovery Requests, Impose Sanctions, and for Supplementary Relief in Aid of Execution" (hereinafter "Barbara's Motion to Compel"). As the name of this motion suggests, Barbara requested that the trial court enter an order: "(1) compelling [Appellants] to

---

[2] We note that, on April 30, 2018, the trial court entered an order striking the January 19, 2018 judgment and dissolving all writs of execution issued in the matter. Trial Court Order, 4/30/18, at 1. Within the trial court's Rule 1925(a) opinion, the trial court opines that its April 30, 2018 order was invalid because Appellants "withdrew the[ir] underlying motion [to strike the January 19, 2018] judgment minutes before" the trial court entered its April 30, 2018 order. Trial Court Opinion, 11/1/18, at 11-12. This is incorrect. As explained above, the January 19, 2018 judgment was void *ab initio* regardless of any action taken by the trial court. Therefore, the trial court possessed the ability to strike the void judgment on "its own motion." *Romberger*, 139 A. at 160. Hence, the fact that Appellants withdrew their underlying motion to strike the judgment minutes before the trial court entered its order striking the judgment has no effect upon the validity of the trial court's April 30, 2018 order.

- 4 -

respond to [Barbara's] Interrogatories in Aid of Execution and Requests for Production, (2) imposing sanctions against [Appellants], and (3) granting supplementary relief in aid of execution."  Barbara's Motion to Compel, 3/15/18, at 1 (some capitalization omitted).

On May 18, 2018, the trial court entered an order granting in part and denying in part Barbara's Motion to Compel.  The order declares:

> 1. [Appellants] shall provide [Barbara's] counsel with full and complete responses to [Barbara's] Interrogatories and Requests for Production of [D]ocuments within [30] days of the date of this order.
>
> 2. All other requests for relief are denied.

Trial Court Order, 5/18/18, at 1 (some capitalization omitted).

On April 3, 2018, the trial court denied Appellants' post-trial motion. Trial Court Order, 4/3/18, at 1.  Appellants filed a notice of appeal on April 30, 2018 and a valid judgment was subsequently entered on May 21, 2018.

Following the May 21, 2018 entry of judgment, Appellants filed with the trial court a "Motion for Clarification."  Appellants' Motion for Clarification, 6/8/18, at 1-7.  Within this motion, Appellants requested clarification on two issues.  First, Appellants noted that Barbara requested all of her discovery in aid of execution prior to the entry of a valid judgment.  *Id.* at 2-3.  Appellants claimed that, since there was no valid judgment during the time Barbara sought her discovery in aid of execution, Appellants were not required to respond to Barbara's discovery requests.  *Id.* at 3.  However, Appellants called attention to the May 18, 2018 trial court order, which was also entered prior

- 5 -

to a valid judgment, and which demanded that Appellants respond to the discovery requests. Appellants requested clarification of the May 18, 2018 order because "the record does not reflect that a valid and legally recognizable judgment was entered prior to the May 18 order [and it] is unclear from the May 18 order whether [Appellants] must produce the answers to the discovery in aid of execution." *Id.* at 4 (some capitalization omitted).

Second, Appellants requested clarification because, on May 29, 2018, the trial court approved a supersedeas bond in the maximum amount of $6,470,400.00 (or, 120% of the monetary judgment against Appellants), "conditioned for the satisfaction of the judgment in full with interest and costs for the delay, if [the judgment] is affirmed or if for any reason the appeal is dismissed, or for the satisfaction of any modification of the order." *Id.* at 4-5 (some capitalization omitted), *quoting*, Supersedeas Bond, 5/29/18, at 2. Under the terms of the supersedeas bond, the trial court "order[ed] a stay of execution of, or any proceedings to enforce, the judgment" rendered against Appellants. Supersedeas Bond, 5/29/18, at 2. Given these circumstances, Appellants requested clarification as to "whether it was the intent of the [trial] court [to state in the May 18, 2018 order] . . . that [Appellants] must produce the answers to the discovery in aid of execution." Appellants' Motion for Clarification, 6/8/18, at 5 (some capitalization omitted).

Barbara filed an "Emergency Motion for Sanctions" against Appellants on June 19, 2018. *See* Barbara's Emergency Motion for Sanctions, 6/19/18, at 1-3. Within this motion, Barbara claimed that Appellants "intentionally

failed to comply with" the trial court's May 18, 2018 order, which directed that Appellants "provide [Barbara's] counsel with full and complete responses to [Barbara's] Interrogatories and Requests for Production of [D]ocuments within [30] days." *Id.* at 2. Barbara requested that the trial court sanction Appellants $1,000.00 per day "for each day any [Appellant] fails to produce responses to [her] discovery requests" and grant her "such other relief as the [trial] court deems just and appropriate." *Id.* at 3 (some capitalization omitted).

On July 20, 2018, the trial court entered an order declaring, in relevant part:

> 1. [Appellants'] Motion for Clarification is hereby denied.
>
> 2. [Appellants] shall provide [Barbara's] counsel with full and complete responses to [Barbara's] Interrogatories and Requests for Production of [D]ocuments within [30] days of the date of this order.
>
> 3. Failure to comply with [the trial court's] order will result in the imposition of sanctions upon [Appellants].

Trial Court Order, 7/20/18, at 1 (emphasis and some capitalization omitted).

On Monday, August 20, 2018, Appellants filed a notice of appeal from the trial court's July 20, 2018 order. Appellants raise one issue to this Court:

> Did the [trial] court commit an error of law in its July 20, 2018 order, . . . denying the Motion for Clarification and granting the Emergency Motion and ordering [Appellants] to provide Barbara's counsel with full and complete responses to the Interrogatories and Requests for Production of Documents (hereinafter the[] "Execution Discovery") within [30] days because the pursuit of the Execution Discovery prior to the time the supersedeas bond was filed of record

was void and [had] no effect as established by Pa.R.C.P. 227.4(1)(b) because [] Barbara was effectively secured or bonded in an amount well in excess of the judgment and as such, no practical or legal reason exists to require [Appellants] to respond to the Execution Discovery and the Execution Discovery served absolutely no legitimate purpose, and was sought strictly to annoy, or to harass [Appellants] and was undertaken in bad faith, creating unreasonable annoyance, embarrassment, oppression, burden or expense?

Appellants' Brief at 15 (some capitalization omitted).

Prior to reaching the merits of this appeal, this Court must "first ascertain whether the [order appealed from] is properly appealable." *Commonwealth v. Borrero*, 692 A.2d 158, 159 (Pa. Super. 1997). Indeed, since "the question of appealability implicates the jurisdiction of this Court[, the issue] may be raised by [this] Court *sua sponte*." *Commonwealth v. Baio*, 898 A.2d 1095, 1098 (Pa. Super. 2006).

Generally, this Court's jurisdiction "extends only to review of final orders." *Rae v. Pa. Funeral Dir's Ass'n*, 977 A.2d 1121, 1124-1125 (Pa. 2009); 42 Pa.C.S.A. § 742; Pa.R.A.P. 341(a). A final order is defined as any order that: "(1) disposes of all claims and of all parties; [] (2) is explicitly defined as a final order by statute; or (3) is entered as a final order pursuant to [Pennsylvania Rule of Appellate Procedure 341(c)]." Pa.R.A.P. 341(b).

Our Supreme Court has held that "a determinative order relating to execution is in character a judgment, which, when of final nature, is appealable." *Cherry v. Empire Mut. Ins. Co.*, 208 A.2d 470, 471 (Pa. 1965) (quotations and citations omitted). The trial court's July 20, 2018 order directs that Appellants comply with Barbara's discovery requests in aid of

execution. This order, directing compliance with discovery requests, is not of a "final nature" and, thus, does not constitute a final order. **Kine v. Forman**, 194 A.2d 175, 176-177 (Pa. 1963) (holding: an order directing the judgment debtor to answer certain questions, posed during discovery in aid of execution on a judgment, was interlocutory and unappealable);[3] **see also Jones v. Faust**, 852 A.2d 1201, 1203 (Pa. Super. 2004) ("in general, discovery orders are not final, and are therefore unappealable"). The order is, therefore, not appealable under Rule 341(b)(1). Further, the trial court's July 20, 2018 order is not "defined as a final order by statute" and was not "entered as a final order pursuant to [Pa.R.A.P. 341(c)]." Pa.R.A.P. 341(b)(2) and (3).

Therefore, since the trial court's July 20, 2018 order does not fall under any of the three definitions of a "final order," the order is not appealable under Rule 341. The order is thus non-final and interlocutory.

Interlocutory orders are appealable in certain circumstances. As our Supreme Court explained:

> in addition to an appeal from final orders of the Court[s] of
> Common Pleas, our rules provide the Superior Court with
> jurisdiction in the following situations: interlocutory appeals
> that may be taken as of right, Pa.R.A.P. 311; interlocutory
> appeals that may be taken by permission, Pa.R.A.P. [312];
> appeals that may be taken from a collateral order, Pa.R.A.P.

---

[3] Our Supreme Court decided **Kine** in 1963, which was prior to its adoption of the collateral order doctrine. **See Shearer v. Hafer**, 177 A.3d 850, 856 (Pa. 2018) (noting that the Pennsylvania Supreme Court first "embraced the collateral order doctrine as a matter of Pennsylvania law" in 1975, in the case of **Bell v. Beneficial Consumer Discount Co.**, 348 A.2d 734 (Pa. 1975)).

313; and appeals that may be taken from certain distribution orders by the Orphans' Court Division, Pa.R.A.P. 342.

*Commonwealth v. Garcia*, 43 A.3d 470, 478 n.7 (Pa. 2012) (internal quotations omitted), *quoting McCutcheon v. Phila. Elec. Co.*, 788 A.2d 345, 349 n.6 (Pa. 2002).

Here, the trial court's July 20, 2018 order is not an orphans' court distribution order (under Rule 342), it is not appealable as of right (under Rule 311), and Appellants did not ask for or receive permission to appeal the order (under Rule 312). Thus, the question before this Court is whether the order is appealable under the collateral order doctrine. *See* Pa.R.A.P. 313.

Pennsylvania Rule of Appellate Procedure 313 defines a collateral order as one that: "1) is separable from and collateral to the main cause of action; 2) involves a right too important to be denied review; and 3) presents a question that, if review is postponed until final judgment in the case, the claim will be irreparably lost." *In re Bridgeport Fire Litigation*, 51 A.3d 224, 230 n.8 (Pa. Super. 2012); *see also* Pa.R.A.P. 313(b). Our Supreme Court has emphasized:

> the collateral order doctrine is a specialized, practical [exception to] the general rule that only final orders are appealable as of right. Thus, Rule 313 must be interpreted narrowly, and the requirements for an appealable collateral order remain stringent in order to prevent undue corrosion of the final order rule. To that end, each prong of the collateral order doctrine must be clearly present before an order may be considered collateral.

*Melvin v. Doe*, 836 A.2d 42, 46-47 (Pa. 2003) (internal citations omitted).

Moreover, and in keeping with the narrow interpretation of the collateral order doctrine, our Supreme Court has held that "the collateral order rule's three-pronged test must be applied independently to each distinct legal issue over which an appellate court is asked to assert jurisdiction pursuant to Rule 313." *Rae*, 977 A.2d at 1130. Therefore, even if the collateral order test "is satisfied with respect to one [appellate] issue," the assertion of jurisdiction does not necessarily mean that we have "jurisdiction to consider every issue within the ambit of the appealed order." *Id.* at 1123.

As our Supreme Court has held, an order is "separable from and collateral to the main cause of action" if it is capable of review without considering the merits of the underlying cause of action. *Ben v. Schwartz*, 729 A.2d 547, 551-552 (Pa. 1999); *Melvin*, 836 A.2d at 45-46. In the case at bar, Appellants claim that the trial court erred when it directed that they comply with Barbara's discovery requests in aid of execution, even though Appellants appealed the underlying judgment and Appellants obtained (and the trial court approved) an appropriate supersedeas bond. This issue is "separable from and collateral to the main cause of action," as it is solely concerned with a discovery request regarding Appellants' personal assets and the effect of a supersedeas bond upon discovery in aid of execution. Therefore, the order satisfies the first prong of the collateral order doctrine.

Next, we must determine whether the directive that Appellants comply with Barbara's discovery requests, notwithstanding their appeal and acquisition of a supersedeas bond, "involves a right too important to be denied

review." ***In re Bridgeport Fire Litigation***, 51 A.3d at 230 n.8. Our Supreme Court has explained:

> In analyzing the importance prong, we weigh the interests implicated in the case against the costs of piecemeal litigation.
>
> For purposes of defining an order as a collateral order under Rule 313, it is not sufficient that the issue be important to the particular parties. Rather it must involve rights deeply rooted in public policy going beyond the particular litigation at hand.
>
> The overarching principle governing "importance" is that . . . an issue is important if the interests that would potentially go unprotected without immediate appellate review of that issue are significant relative to the efficiency interests sought to be advanced by adherence to the final judgment rule.

***Ben***, 729 A.2d at 552 (citations, corrections, and some quotations omitted).

Post-judgment discovery in aid of execution demands the disclosure of the defendant's personal assets – information in which the defendant possesses a right of privacy. ***See*** Pa.R.C.P. 3117(a) (discovery in aid of execution is done "for the purpose of discovery of assets of the defendant"); ***see also Szarmack v. Welch***, 318 A.2d 707, 710-711 (Pa. 1974) (explaining the difference between discovery regarding the extent of insurance coverage and discovery regarding the "private financial information" of the defendant); ***Iorio v. Carnegie Borough***, 13 Pa. D. & C. 3d 236 (C.C.P. Allegheny Cty. 1980) (Wettick, J.) ("[t]he disclosure of personal assets constitutes an invasion of privacy and the Supreme Court has never required the disclosure of such information until liability has been established").

Our Supreme Court has held that the mere "assertion of an attendant privacy concern [does not] transform a discovery order that otherwise is not appealable by right into a collateral order subject to as-of-right interlocutory appellate review." ***Dougherty v. Heller***, 138 A.3d 611, 628 (Pa. 2016). Instead, the Supreme Court held:

> the specific privacy concern in issue must be evaluated and adjudged to satisfy the importance requirement. In this regard, we make the distinction among different orders of privacy interests, such as those of a constitutional magnitude or recognized as such by statute, as compared with lesser interests.

***Id.*** at 628-629 (footnote omitted).

The ***Dougherty*** Court highlighted the statutorily-recognized privacy interest of "information contained in federal tax returns," which is "made confidential *per* federal statute." ***Id.*** at 629 n.10, *citing* 26 U.S.C. § 6103(a) (providing that federal income tax returns and "return information shall be confidential").

Barbara seeks discovery of Appellants' personal financial information in aid of execution, notwithstanding the fact that Appellants filed a timely notice of appeal, the trial court approved Appellants' supersedeas bond, and execution in this case has been stayed. The information Barbara seeks is "contained in [Appellants'] federal tax returns;" as such, the information is "made confidential *per* federal statute" and is afforded a heightened privacy interest. ***See Dougherty***, 138 A.3d at 629 n.10.

Appellants' heightened privacy interest, when combined with the fact that Appellants filed a timely notice of appeal and the trial court approved Appellants' supersedeas bond (thus staying execution), leads us to conclude that the trial court's July 20, 2018 order involves a right too important to be denied review. We arrive at this conclusion because the right to privacy is "deeply rooted in public policy going beyond the particular litigation at hand" and the privacy interests that "would potentially go unprotected without immediate appellate review . . . are significant relative to the efficiency interests sought to be advanced by adherence to the final judgment rule." *Ben*, 729 A.2d at 552 (quotations, citations, and corrections omitted); *J.S. v. Whetzel*, 860 A.2d 1112, 1117 (Pa. Super. 2004) (holding: trial court's discovery order, which directed that the appellant produce certain income tax returns, satisfied the second prong of the collateral order doctrine because the appellant's "privacy interest in his income information raises a sufficiently important public policy concern"); *see also Feldman v. Ide*, 915 A.2d 1208, 1211 (Pa. Super. 2007) (holding that a discovery order, which directed defendant to disclose his medical expert's income tax returns, satisfied the second prong of the collateral order doctrine because: "the underlying privacy rights implicate matters of public policy that extend beyond the current controversy. In that [the defendant], and not [the expert witness], was the party served with the request, not only are [the expert witness'] privacy rights implicated by the trial court's order, [the defendant's] right to choose the means by which to defend himself is also implicated. These rights have

obvious implications extending beyond the confines of this case") (citations and some capitalization omitted); ***Merithew v. Valentukonis***, 869 A.2d 1040, 1043 (Pa. Super. 2005) (holding: "[r]egarding the second prong [of the collateral order doctrine], the [trial court's] order compels [the appellant] to answer interrogatories that would permit the [plaintiffs] to determine [the appellant's] complete financial worth. We agree with [the appellant] that her privacy interest in her financial information raises a sufficiently important public policy concern, and the second prong is established").[4] Further, as will be explained below, because of the stay, Barbara does not yet have any right to intrude upon Appellants' privacy interests in their personal financial information. Therefore, we conclude that this portion of the trial court's order satisfies the second prong of the collateral order doctrine.

Finally, we must determine whether the order "presents a question that, if review is postponed until final judgment in the case, the claim will be irreparably lost." ***In re Bridgeport Fire Litigation***, 51 A.3d at 230 n.8. We

---

[4] The ***Merithew*** Court applied a "whole order approach" to the collateral order doctrine and, in effect, ruled that if one issue in an order satisfies the collateral order doctrine, the entire order was subject to review. ***See Merithew***, 869 A.2d at 1044 (proceeding to determine whether the information sought in the discovery order was relevant – which is an issue that is not "separable from and collateral to the main cause of action"). In ***Rae***, the Pennsylvania Supreme Court held that this "whole order approach" was incorrect and that "the collateral order rule's three-pronged test must be applied independently to each distinct legal issue over which an appellate court is asked to assert jurisdiction pursuant to Rule 313." ***Rae***, 977 A.2d at 1130. Thus, ***Rae*** abrogated ***Merithew*** to the extent that ***Merithew*** applied the "whole order approach" to the collateral order doctrine. ***See Rae***, 977 A.2d at 1127 n.9.

conclude that this factor has also been met in this case because, once Appellants' personal financial information has been disclosed to Barbara, Appellants' privacy interests in that information will have been lost – and the action cannot be undone. **See Ben**, 729 A.2d at 552. Therefore, we conclude that the trial court's July 20, 2018 order, directing that Appellants comply with Barbara's discovery in aid of execution, is appealable under the collateral order doctrine. We now turn to the merits of Appellants' claim.

On appeal, Appellants claim that the trial court erred in ordering that they respond to Barbara's discovery in aid of execution requests because Appellants are in the process of appealing the underlying judgment against them and Appellants obtained, and the trial court approved, a supersedeas bond for 120% of the monetary judgment. Appellants' Brief at 25. According to Appellants, since the bond fully secures Barbara and since the execution proceedings are stayed during the pendency of the appeal, Barbara "may not pursue discovery in aid of execution." **Id.** at 31. We agree.

"Generally, on review of an order concerning discovery, an appellate court applies an abuse of discretion standard." **McNeil v. Jordan**, 894 A.2d 1260, 1268 (Pa. 2006). However, where an issue presents a pure question of law, our standard of review is *de novo* and our scope of review is plenary. **Shinal v. Toms**, 162 A.3d 429, 441 (Pa. 2017).

The parties and the trial court all agree that the trial court's approval of Appellants' supersedeas bond (in the amount of 120% of the monetary judgment against them) triggered a stay of execution on the judgment,

pending resolution of Appellants' appeal from that judgment. *See* Barbara's Brief at 18; Appellants' Brief at 24; Trial Court Opinion, 11/1/18, at 12-13; *see also* Pa.R.A.P. 1735(a) ("[t]he filing of appropriate security in the amount required by or pursuant to this chapter within 30 days from the entry of the order appealed from shall stay any execution theretofore entered"); Pa.R.A.P. 1731(a) ("an appeal from an order involving solely the payment of money shall . . . operate as a supersedeas upon the filing with the clerk of the lower court of appropriate security in the amount of 120% of the amount found due by the lower court and remaining unpaid"). Therefore, we, too, will proceed under the assumption that the trial court's approval of Appellants' supersedeas bond triggered a stay of execution on the judgment.

The dispute on appeal concerns the effect of the stay of execution upon Barbara's ability to conduct discovery in aid of execution. According to Appellants, the stay of execution on the judgment also stays any discovery in aid of execution. On the other hand, Barbara and the trial court contend that the stay of execution has no effect upon discovery in aid of execution. We agree with Appellants.

Pennsylvania Rule of Civil Procedure 3117 provides:

**Rule 3117. Discovery in Aid of Execution**

(a) Plaintiff at any time after judgment, before or after the issuance of a writ of execution, may, for the purpose of discovery of assets of the defendant, take the testimony of any person, including a defendant or a garnishee, upon oral examination or written interrogatories as provided by the rules relating to Depositions and Discovery. The

- 17 -

prothonotary of the county in which judgment has been entered or of the county within this Commonwealth where the deposition is to be taken, shall issue a subpoena to testify.

(b) All reasonable expenses in connection with the discovery may be taxed against the defendant as costs if it is ascertained by the discovery proceedings that the defendant has property liable to execution.

Pa.R.C.P. 3117.

As we explained:

Discovery under Rule 3117 . . . is "pure discovery," intended as an ancillary aid in the discovery of assets.

The language of Rule 3117 makes its broad application clear. Discovery under the rule may be pursued "at any time after judgment, before or after the issuance of a writ of execution." Discovery in aid of execution thus is not linked to a pending execution or attachment, but rather may be pursued even before issuance of a writ in order to locate assets subject to execution and obtain the information necessary to begin the process of execution or attachment. Moreover, Rule 3117 permits discovery requests to be directed to "any person, including a defendant or garnishee." Thus, in keeping with the "pure discovery" purposes of the rule, plaintiffs are not restricted to obtaining discovery from defendants or garnishees, but may seek discovery from any person who may have information regarding the location of assets of the judgment debtor.

*PaineWebber, Inc. v. Devin*, 658 A.2d 409, 412-413 (Pa. Super. 1995) (citations omitted).

The body of Rule 3117 does not speak to the question of whether a stay of execution also stays discovery in aid of execution. Nevertheless, the rule is titled "Discovery **in Aid of Execution**." *Id.* (emphasis added). Further,

under our rules of construction, "[t]he title or heading of a rule may be considered in construing the rule." Pa.R.C.P. 129(a).

The title of Rule 3117 makes it clear that discovery under Rule 3117 must be "in aid of execution." Given that execution has been stayed in this matter, we conclude discovery in aid of the execution must likewise be stayed. As we have held: "'Stay' is defined as '[t]he postponement or halting of a proceeding, judgment or the like.' Black's Law Dictionary, Seventh Edition, 1999. By its definition, the word stay . . . directs that the proceeding in the trial court should be postponed or halted until" the stay is lifted. ***Roth Cash Register Co. v. Micro Sys., Inc.***, 868 A.2d 1222, 1226 (Pa. Super. 2005). Simply stated, with the execution stayed, there can be no discovery to aid the execution, as the execution and the execution proceedings have been "postpone[d]" and "halt[ed]" during the pendency of the stay.

Therefore, we conclude that the trial court erred when it ordered Appellants to respond to Barbara's discovery in aid of execution requests during the pendency of the stay of execution.

Order vacated. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/1/2019

- 19 -