J-A30013-25
J-A30014-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| JOHN J. PETROCI, III, INDIVIDUALLY AND AS A SHAREHOLDER OF DUMMOND CHEMICALS, INC. | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : : : | |
| v. | : : : | |
| | : | No. 3170 EDA 2024 |
| NORMAN CHANES, DUMOND CHEMICALS, INC., DUMOND, LLC AND SUNRISE INVESTMENT CAPITAL, LLC | : : : : : | |

Appeal from the Order Entered October 21, 2024
In the Court of Common Pleas of Chester County Civil Division at No(s):
2017-08865-CT

| | | |
|---|---|---|
| JOHN J. PETROCI, III, INDIVIDUALLY AND AS A SHAREHOLDER OF DUMMOND CHEMICALS, INC. | : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : : : : | |
| v. | : : | |
| | : | No. 1089 EDA 2025 |
| NORMAN CHANES, DUMOND CHEMICALS, INC., DUMOND, LLC AND SUNRISE INVESTMENT CAPITAL, LLC | : : : : : | |

Appeal from the Order Entered October 21, 2024
In the Court of Common Pleas of Chester County Civil Division at No(s):
2017-09954-MJ

J-A30013-25
J-A30014-25

BEFORE:  LAZARUS, P.J., PANELLA, P.J.E., and SULLIVAN, J.

MEMORANDUM BY LAZARUS, P.J.:                    **FILED APRIL 1, 2026**

John J. Petroci, III, individually and as a shareholder of Dumond Chemicals, Inc., appeals from the order, entered in the Court of Common Pleas of Chester County, granting in part and denying in part his motion to impose liability on supersedeas bonds.[1]  After review, we vacate and remand for further proceedings consistent with this memorandum.

We have previously summarized the underlying events as follows:

> [The parties' litigation arose] from two actions filed in 2017 in the Chester County Court of Common Pleas following Petroci's termination from his position as president and chief executive officer of Dumond[] Chemicals[,] Inc. [(Dumond)], a New York corporation headquartered in Chester County.  The first action, filed at Docket No. 2017-08865, was initiated by Petroci against the Dumond Parties,[2] and asserted claims for breach of fiduciary duty, corporate opportunity, breach of contract, unjust enrichment, misappropriation, and conversion.  The second action, filed at Docket No. 2017-09954, was initiated by the Dumond Parties against Petroci, and asserted claims for breach of contract, fraudulent inducement, conversion, fraud, breach of fiduciary duty, unjust enrichment[,] alternative claims of replevin and conversion[,] and sought an accounting and injunctive relief.

> The trial court consolidated the actions and the matter proceeded to a jury trial before the Honorable William P. Mahon in April [of]

_____

[1] We hereby *sua sponte* consolidate the appeals at 3170 EDA 2024 and 1089 EDA 2025.  **See** Pa.R.A.P. 513.

[2] The "Dumond Parties" refers to the Appellees in this matter, including Norman Chanes, Dumond Chemicals, Inc., Dumond, LLC, and Sunrise Investment Capital, LLC.  Dumond Chemicals, Inc., has since changed its name to Dumond, Inc.; however, to avoid confusion, we will continue to refer to the entity as Dumond Chemicals, Inc.  Chanes is the *de facto* owner of Dumond Chemicals, Inc.  **See Petroci v. Chanes**, 304 A.3d 731 at *1 n.2 (Pa. Super. 2023) (Table) (**Petroci I**).

- 2 -

2021. During a recess on the third day of trial, the parties engaged in settlement negotiations and reached a verbal settlement agreement. The trial court requested that the parties place the terms of the agreement on the record. Counsel for Petroci indicated that, pursuant to the agreed-upon settlement terms, Dumond Chemicals, Inc. would pay Petroci a total of $3,600,000[.00], which payment would be personally guaranteed by Chanes. The parties agreed that the total settlement payment to Petroci would be made in installments over the course of four years: $750,000[.00] payable by July 1, 2021; $250,000[.00] payable by December 31, 2021; and the remaining $2,600,000[.00] to be paid in four installments (of $650,000[.00]), each due on December 31 of the year, with the first payment due on December 31, 2022, the second payment due on December 31, 2023, the third payment due on December 31, 2024, and the final payment due on December 31, 2025. Any outstanding balance on these payments would be subject to [] simple interest of four percent. In exchange, Petroci would relinquish any right, claim, title, or interest in any stock or ownership of Dumond Chemicals, Inc., and Dumond, LLC. Further, the precious stones, sports memorabilia, and other disputed items placed in the storage unit would become the sole property of Petroci. Regarding the manner in which the payments would be treated for tax purposes, the parties indicated that tax experts would need to be consulted; however, they represented to the trial court that the [p]arties would work together "in good faith [] to determine the best lawful tax treatment of the settlement." The parties also represented to the trial court that they would draft a formal written settlement agreement that would include: (1) a release of all claims of the litigants and their affiliates; (2) a confidentiality provision; (3) a no disparagement provision; (4) a no admission of liability provision; and (5) "other items that are frequently in cases involving business divorce[ and] termination issues." The parties further agreed that Chanes would give a reference for Petroci to future prospective employers. The parties agreed that there would be a provision in the settlement agreement regarding remedies in the event of a breach of the agreement by either party. Finally, Dumond Chemicals, Inc.[,] would take out a life insurance policy on Chanes in an amount sufficient to cover the full balance of the settlement payment to Petroci, with the amount of the policy to decline over time as settlement payments are made to Petroci. Dumond Chemicals, Inc.[,] would be the owner of the policy, and the beneficiary, in the event of Chanes's death, would be Petroci. The

- 3 -

parties agreed that the cost of the insurance policy would be born[e] equally by the parties. Both Chanes and Petroci agreed to the terms of the settlement on the record and thanked Judge Mahon for his time and assistance. After these on-the-record representations, the trial court dismissed the jury.[3] Petroci then took possession of the disputed items in the storage unit.

The parties thereafter attempted to agree on a written settlement agreement and submitted competing drafts[.] Ultimately, they reached an impasse regarding several terms that were not stated on the court record, but which the Dumond Parties insisted be included in the settlement agreement. Specifically, the Dumond Parties insisted that the $3,600,000[.00] in settlement payments be treated as "wages" to [] Petroci for tax purposes. The Dumond Parties also insisted that the written settlement agreement include a provision which rendered Dumond Chemicals, Inc.'s obligation to pay the settlement amount voidable if any of its lenders objected to the settlement payment for any reason. The Dumond Parties further insisted that the settlement agreement include a three-year non-compete provision. The Dumond Parties additionally insisted on a provision which permitted Dumond Chemicals, Inc.[,] to reduce its payment obligations to Petroci by $1,100,000[.00] by making an early payment. The Dumond Parties also sought to include terms regarding requested representations, assurances to lenders, trade secrets, proprietary information, and dispute resolution. [] Petroci refused to accept these additional terms.

In October [of] 2021, the Dumond Parties filed a motion to dissolve the purported settlement. On December 17, 2021, the trial court entered an order denying the motion and directing the prothonotary to mark the matter as settled on both dockets.[4] On December 23, 2021, the [prothonotary[5]] entered [] judgment in

_____

[3] The trial court did not issue a contemporaneous order regarding the acceptance or adoption of the settlement agreement.

[4] In its order, the trial court "adopt[ed] the settlement placed on the record by the parties on April 8, 2021 as an [o]rder of [c]ourt." Trial Court Order, 12/17/21, at 1.

[5] Our review of the record indicates that these judgments were entered by the prothonotary upon praecipe from Petroci's counsel, discussed **infra**.

favor of Petroci and against the Dumond Parties at both
dockets. The Dumond Parties [appealed].

***Petroci I***, 304 A.3d at *1-2 (internal citations omitted).

Prior to and since ***Petroci I***, much has occurred that is relevant to our analysis here. While ***Petroci I*** was pending on appeal, the Dumond Parties did not pay Petroci the $750,000.00 due on July 31, 2021. On December 23, 2021, upon Petroci's praecipe for entry of judgment pursuant to Pa.R.Civ.P. 227.4, the prothonotary entered judgment ("Judgment #1") in favor of Petroci and against the Dumond Parties in the amount of $806,811.00. Judgment #1 consisted of the sum of the principal payment due on July 31, 2021 ($750,000.00), plus 4% interest on the entirety of the then-outstanding balance of $3,600,000.00 from July 31, 2021 through December 22, 2021.

The Dumond Parties then failed to make the next agreed-upon payment of $250,000.00 by December 31, 2021. Thereafter, on January 3, 2022, upon Petroci's second praecipe for entry of judgment, the prothonotary entered judgment ("Judgment #2") in the amount of $253,132.00. Akin to Judgment #1, this total was the sum of the principal payment due on December 31, 2021 ($250,000.00), plus 4% interest on the then-outstanding balance of $2,850,000.00 from December 23, 2021 through January 2, 2022.

On January 13, 2022, by agreement of the parties, the Dumond Parties "posted cash security in the amount of $1[,250,000.00] to effectuate a supersedeas of Judgments #1 and #2 [while ***Petroci I*** was] pending appeal." Motion to Impose Liability on Supersedeas Bonds, 6/17/24, at 3-4.

The Dumond Parties then, again, failed to make payment on the agreed-upon $650,000.00 by December 31, 2022. On January 17, 2023, upon Petroci's praecipe for entry of judgment, the prothonotary entered judgment ("Judgment #3") in the amount of $768,372.00. This total was the sum of the principal payment due on December 31, 2022 ($650,000.00), plus 4% interest on $2,850,000.00[6] from December 31, 2022 through January 16, 2023.

On January 23, 2023, the Dumond Parties posted a bond ("Bond #1"),[7] which replaced the January 13, 2022 cash security, in the amount of $1,250,000.00 as security for stay of execution pending appeal on Judgments #1 and #2. On February 2, 2023, the Dumond Parties posted a second bond ("Bond #2") in the amount of $780,000.00 as security for stay of execution pending appeal on Judgment #3.

On August 8, 2023, this Court affirmed the trial court's finding that an enforceable settlement agreement existed between the parties. ***Petroci I***, 304 A.3d at *5-6. In doing so, we identified that:

> The parties manifested their assent to the terms of the settlement agreement and stated the material terms of that agreement on the record in open court. Specifically, the parties agreed to: the settlement amount; the dates of payment of the settlement

---

[6] Petroci admitted in his motion to impose liability on supersedeas bonds and appellate brief that this calculation was incorrect. The outstanding balance at the time was actually $2,600,000.00 because of the cash security posted for Judgments #1-2.

[7] While the parties refer to this as a supersedeas bond, we decline to do so for reasons discussed ***infra***.

- 6 -

amount by Dumond Chemicals, Inc.[,] to Petroci; interest to accrue on any late payments; the surrender of company stock by Petroci; that Petroci would take possession of the disputed items; a confidentiality provision; a no disparagement provision; a no admission of liability provision; a reference from Chanes to prospective employers; and a life insurance policy on Chanes to secure the settlement payments. Indeed, both Chanes and Petroci stated their agreement to the terms of the settlement and profusely thanked Judge Mahon for his time and assistance. Moreover, based on the parties' clear manifestation of assent to the terms of this settlement agreement, the trial was terminated, the jury was discharged, the litigation was suspended, and Petroci took possession of the disputed items. Thus, the Dumond Parties' claim that there was no meeting of the minds that a settlement of the litigation had, in fact, occurred rings hollow. In short, there was an offer by Dumond Chemicals, Inc. (the settlement figure), acceptance of the offer by Petroci, and consideration (in exchange for the parties terminating their lawsuits, Dumond Chemicals, Inc. would pay Petroci the agreed upon sum of $3,600,000[.00]).

*Id.* at *5 (internal citation and paragraph break omitted). The Dumond Parties filed a petition for allowance of appeal from our decision in *Petroci I* on November 15, 2023.

While the petition was pending, the Dumond Parties then failed to make payment on the agreed-upon $650,000.00 by December 31, 2023. By stipulation of the parties, on January 11, 2024, the Dumond Parties agreed to increase the amount of Bond #2 by an additional $780,000.00 to stay execution on the December 31, 2023 payment pending appeal. Bond #2 was thus increased by a surety rider for $780,000.00 to a total of $1,560,000.00 on January 11, 2024.

On May 13, 2024, the Supreme Court of Pennsylvania denied the Dumond Parties' petition for allowance of appeal. *Id.*, 318 A.3d 381 (Pa. 2024) (Table).

The Dumond Parties then failed to make payment on the agreed-upon $650,000.00 by December 31, 2023. On June 11, 2024, upon Petroci's praecipe for entry of judgment, the prothonotary entered judgment ("Judgment #4") in the amount of $757,490.41. This consisted of the sum of the principal payment due on December 31, 2023 ($650,000.00), plus 4% interest on $1,950,000.00 from January 17, 2023 through June 3, 2024. Also on June 11, 2024, upon praecipe to correct judgment, Judgment #3 was reduced from $768,372.00 to $757,704.00 to correct the amount of interest owed. *See supra* n.6.

On June 17, 2024, the court entered an order denying the Dumond Parties' motion for clarification and stay of recourse against supersedeas. In addition, in the same order, the trial court ordered the Dumond Parties to "fully comply with the terms of the settlement agreement within thirty (30) days of entry of this order or [Petroci] may proceed against [the Dumond Parties'] posted security and/or guaranty." Order, 6/17/24.

On June 17, 2024, Petroci filed a motion to impose liability on supersedeas bonds. The motion requested the trial court, pursuant Pa.R.A.P. 1734, impose liability on Bonds #1 and #2. In addition, Petroci argued that the Dumond Parties' surety was also liable for post-judgment interest on each judgment at the rate of 6% from the date of entry of each judgment until the dates of their payment. *See* Motion to Impose Liability on Supersedeas Bonds, 6/17/24, at 7-8 (citing Pa.R.A.P. 1734(b)). Petroci claimed that the parties had only agreed to 4% interest on the timely payment of outstanding

interest, and that post-judgment interest should also be assessed at a rate of 6%. On July 8, 2024, the Dumond Parties filed an answer to Petroci's motion, arguing, *inter alia*, that only the 4% rate applied.

On October 21, 2024, the trial court granted in part and denied in part Petroci's motion to impose liability on supersedeas bonds. In so doing, the trial court permitted Petroci to immediately seek payment of $2,356,811.00 from the posted supersedeas bonds, as well as future payments of principal and interest against the bonds and consistent with the order. The trial court, however, opined on the interest the Dumond Parties owed Petroci as follows:

> Petroci's computation of interest owed on defaulted principal payments, with the exception of the 12/22/2021 judgment of $806,811[.00] ($750,000[.00] plus 4% interest, from 7[/]31[/]2021 until 12/22/2021, of $56,811[.00]) are in error. Petroci is entitled to 4% simple interest on outstanding principal payments from the date that each individual principal payment is due, as set forth above, until the principal payment on each is made. Petroci's other calculations of interest are calculated from 12/31/2021 on a default of the entire $3.6 million, less any judgment amount. These calculations are not in accord with the settlement agreement negotiated by the parties and affirmed by the Superior Court. The parties negotiated a 4% simple interest default rate and therefore, Petroci is not entitled to a 6% default rate.

Trial Court Order, 10/21/24, at 2-3 (unpaginated).

Thereafter, on November 7, 2024, the Dumond Parties' surety paid Petroci $2,300,000.00 on behalf of the Dumond Parties and in satisfaction of the four principal payments due as of that date. That payment did not include payment on the accrued interest, which was still being disputed by the parties.

- 9 -

On November 20, 2024, Petroci timely appealed from the trial court's October 21, 2024 order. Petroci filed his Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal on December 23, 2024, claiming the trial court erred by: (1) concluding that interest does not accrue on outstanding balances until they are overdue; (2) concluding that he was not entitled to 6% interest upon the payments becoming overdue and/or the entry of judgments on them; and (3) failing to permit post-judgment interest to be calculated based upon the judgments entered against the Dumond Parties, including both principal and pre-judgment interest.

On December 26, 2024, while this appeal was pending, Petroci and the Dumond Parties filed in the trial court a stipulation and proposed order to satisfy judgments. Therein, the parties agreed that, based upon the methodology outlined in the trial court's October 21, 2024 order, the total interest owed on the $2,300,000.00 paid by the surety was $196,964.31. The parties also agreed that: (1) within two days of the stipulation and proposed order being entered, the Dumond Parties would instruct the surety to pay Petroci $196,964.31 for the accrued interest; (2) within five days of receipt of the interest payment, Petroci would cause Judgments #1-4 to be marked satisfied; and (3) upon Petroci marking the judgments as satisfied, the Dumond Parties' surety would be exonerated and released from further undertakings on the Bonds #1-2.

On February 10, 2025, the trial court adopted the parties' stipulation and proposed order to satisfy the judgments.[8]  The trial court issued its Pa.R.A.P. 1925(a) opinion on June 30, 2025.  Petroci raises the following issues for our review:

1. Did the trial court err in concluding that interest owed to [Petroci] on the outstanding balance of settlement payments did not begin to accrue until [the Dumond Parties] defaulted on the payments?

2. Did the trial court err in concluding that [Petroci] is not entitled to interest at the legal rate of 6% upon [the Dumond Parties'] default on settlement[] payments and/or the entry of judgments upon default?

3. Did the trial court err in failing to calculate post-judgment interest on the judgments entered against [the Dumond Parties], including both principal and pre-judgment interest?

Petroci's Brief, at 2-3.

Before proceeding, due to the complicated procedural posture of this matter, we are compelled to consider whether the trial court had jurisdiction to enter the October 21, 2024 order.  Instantly, the prothonotary entered the

_____

[8] The Dumond Parties had filed a notice of cross-appeal on December 4, 2024. On January 10, 2025, the Dumond Parties filed a Rule 1925(b) statement, identifying as error only the trial court's conclusion that the $58,811.00 in interest on the December 22, 2021 judgment was properly calculated based upon the terms of the parties' settlement agreement.  In their Rule 1925(b) statement, the Dumond Parties acknowledged that, if their pending stipulation and proposed order were entered by the trial court, their sole issue on cross-appeal would be resolved.  Following the entry of the trial court's February 10, 2025 order, the Dumond Parties withdrew their cross appeal.

relevant judgments after Petroci filed praecipes pursuant Pa.R.C.P. 227.4(2), which provides:

> In addition to the provisions of any Rule of Civil Procedure or Act of Assembly authorizing the prothonotary to enter judgment upon praecipe of a party . . ., the prothonotary shall, upon praecipe of a party: . . .
>
> . . .
>
> (2) enter judgment when a court grants or denies relief but does not itself enter judgment or order the prothonotary to do so.

Pa.R.C.P. 227.4(2). However, if a court has not specifically adjudicated rights of parties or directed the prothonotary to enter judgment, the prothonotary's authority to enter judgment must have express basis in statute or rule of court, and the prothonotary's authority is confined to the circumstances prescribed by statute or rule. *See Commonwealth v. Abdul-Salaam*, 996 A.2d 482, 487 (Pa. 2010) (citing *Thompson v. Cortese*, 398 A.2d 1079, 1081 (Pa. Cmwlth. 1979)). Where a prothonotary lacks authority to enter a judgment, the judgment entered is "void, a nullity, and lacking in legal effect." *Linde v. Linde*, 222 A.3d 776, 780 (Pa. Super. 2019).

Here, the prothonotary did not have the authority to enter Judgments #1-4 because the parties reached a settlement agreement, which did not include a provision for the entry of judgment. Accordingly, there was no judgment to be entered or relief to be granted. *See Petroci I*, 304 A.3d at *5 ("[B]ased on the parties' clear manifestation of assent to the terms of this settlement agreement, the trial was terminated, the jury was discharged, the

litigation was suspended, and Petroci took possession of the disputed items").

Therefore, Judgments #1-4 are void, nullities, and lacking in legal effect. *See*

*Linde*, *supra*.

The "supersedeas bonds" posted by the Dumond Parties are likewise

invalid for several reasons. Petroci claims the bonds were posted pursuant to

Pa.R.A.P. 1731(a), which provides:

> **(a) General rule.** Except as provided by subdivision (b), **an appeal from an order involving solely the payment of money shall**, unless otherwise ordered pursuant to this chapter, **operate as a supersedeas upon the filing with the clerk of the lower court of appropriate security in the amount of 120% of the amount found due by the lower court** and remaining unpaid. Where the amount is payable over a period of time, the amount found due for the purposes of this rule shall be the aggregate amount payable within 18 months after entry of the order.

Pa.R.C.P. 1731(a) (emphasis added).

A supersedeas bond is "a judicial bond designed to 'supersede' the

enforcement of the trial court's judgment. It is a contract in which the surety

obliges itself to pay a final judgment rendered against the principal."

*Humphreys v. SureTec Insurance Company*, 311 A.3d 1175, 1188–89

(Pa. Cmwlth. 2024) (citations and footnote omitted). For example, a

supersedeas bond is properly filed under Rule 1731(a) when a party appeals

from a trial court's monetary judgment. *See Linde*, 222 A.3d at 779–81 (supersedeas bond filed after appeal from $5,392,000.00 judgment).[9]

Here, the trial court did not enter an order directing the payment of money. Likewise, because the Judgments entered by the prothonotary were nullities, they, too, provide no basis for the entry of supersedeas bonds pursuant Rule 1731(a). Therefore, while the parties agreed to the posting of Bonds #1-2, referred to them as "supersedeas" bonds, and believed them to operate according to our Rules of Appellate Procedure, the Bonds were not and did not operate as supersedeas bonds under Rule 1731(a).[10]

Based on this conclusion, the bonds were not the proper subjects of a motion to distribute under Rule 1734, which provides, in relevant part:

---

[9] This Court's review of our Commonwealth's laws governing supersedeas in *Leoni v. Leoni*, 153 A.3d 1073 (Pa. Super. 2017), provides further insight into the proper context for the entry of a supersedeas bond. There, we noted that

> [p]rior to the enactment of Pa.R.A.P. 1735, the effect of supersedeas was controlled by statute[.] The original Act[,] which was codified by 12 P.S. § 1139, provides in [part], as follows: [] "Relating to the entry of bail upon an appeal to the [S]upreme or [S]uperior [C]ourt, *from an order, judgment, or decree directing the payment of money*, and the release of the appellant's real estate from the lien of said judgment, order, or decree pending the appeal and re-entry of judgment, if judgment be affirmed.

*Leoni*, 153 A.3d at 1081–82 (citing P.L. 103, No. 61 (12 P.S. § 1139)) (emphasis added). We summarized that "the plain language of [the original Act] clearly indicates that the Act applied to appeals from judgments or orders directing the payment of money[.]" *Id.* at 1082.

[10] "A hog in a silk waistcoat is still a hog." 1 C.H. Spurgeon, *The Salt-Cellars* 26 (2009).

**(b) Terms of bond.** A supersedeas bond shall be conditioned for the satisfaction of the order if it is affirmed or if for any reason the appeal is dismissed, or for the satisfaction of any modification of the order and in either case costs, interest[,] and any damages for delay that may finally be awarded.

**(c) Liability of Sureties.** If security is given under this chapter in the form of a bond, stipulation[,] or other undertaking in the nature of a bond, with one or more sureties, each surety submits himself to the jurisdiction of the lower court and irrevocably appoints the clerk of the lower court as his agent upon whom any papers affecting his liability on the bond or undertaking may be served. This liability may be enforced on application in the lower court without the necessity of an independent action. The application and such notice of the application as the lower court prescribes may be served on the clerk of the lower court, who shall forthwith mail copies to the sureties if their addresses are known.

Pa.R.A.P. 1734(b). Here, because the parties did not properly enter supersedeas bonds pursuant Rule 1731, Rule 1734(b) does not apply. Therefore, Petroci's motion to impose liability on supersedeas bonds was not properly brought pursuant to our rules of civil procedure

This brings us to the underlying trial court order. Therein, the court summarized the judgments entered against the Dumond Parties and the Bonds posted by the Dumond Parties, reviewed how much the Dumond Parties owed Petroci at the time of the order and the amounts to come due under the forthcoming agreed-upon payments, determined that Petroci was then entitled to $2,356,811.00 total, and ordered that Petroci "may immediately seek payment of $2,356,811.00 from the posted supersedeas bonds[, and] may also seek future payments of principal and interest against the bonds consistent with this order." Trial Court Order, 10/21/24, at 1-3. However,

- 15 -

because the trial court order rests upon a house of cards—null and void judgments, ineffectual "supersedeas" bonds, and a motion lacking a proper procedural foundation—we are constrained to vacate the court's order.

When playing board games in one's own home, if the players do not like the rules of the game, they may simply invent their own and play under "house rules." In our legal system, however, that is not the case. Here, the Rules of Civil Procedure and Common Law provide recourse where a party has failed to comply with the terms of a settlement agreement. In particular, we point the trial court and the parties to Pa.R.C.P. 229.1, which provides the procedures to be followed by a party aggrieved by the breach of a settlement agreement. *See id.* at (d); *see also Raker v. Bar-B-Q Pit, Inc.*, 179 A.3d 576, at *1 (Pa. Super. 2017) (court entered judgment upon motion to enforce settlement agreement); *Camp Horne Self Storage LLC v. Lawyers Title Insurance Corp.*, 150 A.3d 999, 1002 (Pa. Super. 2016) (discussing Rule 229.1). Alternatively, as noted by the trial court in its Rule 1925(a) opinion, Petroci could have filed a common law claim for a breach of the settlement agreement. *See* Trial Court Opinion, 6/30/25, at 3 (unpaginated); *see also Toppy v. Passage Bio, Inc.*, 285 A.3d 672 (Pa. Super. 2022) (discussing claim for breach of settlement agreement brought by former employee).

The parties in this case failed at every turn to proceed in accordance with the law, choosing instead to play under "house rules." Thus, where the underlying "judgments" are null and void, and the "supersedeas" bonds were

- 16 -

not subject to the imposition of liability under our rules of civil procedure, the trial court lacked the authority to enter its order imposing such liability.

The foregoing analysis notwithstanding, we recognize that the parties and trial court have been proceeding under a shared understanding and, in doing so, have agreed for the Dumond parties' Surety to pay Petroci $2,300,000.00 in satisfaction of the four principal payments due as of November 7, 2024, and, based on the methodology outlined in the trial court's October 21, 2024 order, for the Surety to pay Petroci $196,964.31 for the interest on that sum.[11]  Because of our prior finding of the existence of a settlement agreement between the parties in **Petroci I**, and because of the actions taken by the parties and the trial court pursuant a shared understanding of the proceedings below, we affirm the payments made thus far and will not disturb what the parties have agreed to up until this point.

We render no decision on the issues raised by Petroci, namely, what interest rate applies under the settlement agreement and when interest began to accrue under the settlement agreement.  Instead, we leave that to the trial court to consider if the issue is properly before it pursuant our Rules of Civil Procedure or the Common Law avenues set forth above.  Accordingly, we

_____

[11] This interest payment was to be made two days after the trial court entered the parties' December 26, 2024 stipulation, which the trial court did on February 10, 2025.  While the Dumond Parties' brief references that payment having been made, we do not have record evidence before us of that payment, or of the last two principal payments which have come due in the meantime, being made.

affirm in part, the trial court order dealing with the principal amounts due, and

remand for further proceedings consistent with this memorandum.[12]

Order vacated.  Case remanded.  Jurisdiction relinquished.


Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary


Date: 4/1/2026

_____

[12] Our review of the authorities addressing the relevant sections of our Rules of Appellate Procedure, Rules 1731-1751, revealed no cases wherein judgments were entered and supersedeas bonds were posted pursuant to missed payments under a settlement agreement.  Accordingly, we consider our prior silence on the matter supportive of our disposition.

J-A30013-25
J-A30014-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| JOHN J. PETROCI, III, INDIVIDUALLY AND AS A SHAREHOLDER OF DUMMOND CHEMICALS, INC. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | No. 3170 EDA 2024 |
| | : | |
| NORMAN CHANES, DUMOND CHEMICALS, INC., DUMOND, LLC AND SUNRISE INVESTMENT CAPITAL, LLC | : | |

Appeal from the Order Entered October 21, 2024
In the Court of Common Pleas of Chester County Civil Division at No(s):
2017-08865-CT

| | | |
|---|---|---|
| JOHN J. PETROCI, III, INDIVIDUALLY AND AS A SHAREHOLDER OF DUMMOND CHEMICALS, INC. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | No. 1089 EDA 2025 |
| | : | |
| NORMAN CHANES, DUMOND CHEMICALS, INC., DUMOND, LLC AND SUNRISE INVESTMENT CAPITAL, LLC | : | |

Appeal from the Order Entered October 21, 2024
In the Court of Common Pleas of Chester County Civil Division at No(s):
2017-09954-MJ

J-A30013-25
J-A30014-25

BEFORE:  LAZARUS, P.J., PANELLA, P.J.E., and SULLIVAN, J.

MEMORANDUM BY LAZARUS, P.J.:                    **FILED APRIL 1, 2026**

John J. Petroci, III, individually and as a shareholder of Dumond

Chemicals, Inc., appeals from the order, entered in the Court of Common Pleas

of Chester County, granting in part and denying in part his motion to impose

liability on supersedeas bonds.[1]  After review, we vacate and remand for

further proceedings consistent with this memorandum.

We have previously summarized the underlying events as follows:

> [The parties' litigation arose] from two actions filed in 2017 in the
> Chester County Court of Common Pleas following Petroci's
> termination from his position as president and chief executive
> officer of Dumond[] Chemicals[,] Inc. [(Dumond)], a New York
> corporation headquartered in Chester County.  The first action,
> filed at Docket No. 2017-08865, was initiated by Petroci against
> the Dumond Parties,[2] and asserted claims for breach of fiduciary
> duty, corporate opportunity, breach of contract, unjust
> enrichment, misappropriation, and conversion.  The second
> action, filed at Docket No. 2017-09954, was initiated by the
> Dumond Parties against Petroci, and asserted claims for breach of
> contract, fraudulent inducement, conversion, fraud, breach of
> fiduciary duty, unjust enrichment[,] alternative claims of replevin
> and conversion[,] and sought an accounting and injunctive relief.
>
> The trial court consolidated the actions and the matter proceeded
> to a jury trial before the Honorable William P. Mahon in April [of]

---

[1] We hereby *sua sponte* consolidate the appeals at 3170 EDA 2024 and 1089
EDA 2025.  **See** Pa.R.A.P. 513.

[2] The "Dumond Parties" refers to the Appellees in this matter, including
Norman Chanes, Dumond Chemicals, Inc., Dumond, LLC, and Sunrise
Investment Capital, LLC.  Dumond Chemicals, Inc., has since changed its
name to Dumond, Inc.; however, to avoid confusion, we will continue to refer
to the entity as Dumond Chemicals, Inc.  Chanes is the *de facto* owner of
Dumond Chemicals, Inc.  **See Petroci v. Chanes**, 304 A.3d 731 at *1 n.2
(Pa. Super. 2023) (Table) (**Petroci I**).

- 2 -

2021. During a recess on the third day of trial, the parties engaged in settlement negotiations and reached a verbal settlement agreement. The trial court requested that the parties place the terms of the agreement on the record. Counsel for Petroci indicated that, pursuant to the agreed-upon settlement terms, Dumond Chemicals, Inc. would pay Petroci a total of $3,600,000[.00], which payment would be personally guaranteed by Chanes. The parties agreed that the total settlement payment to Petroci would be made in installments over the course of four years: $750,000[.00] payable by July 1, 2021; $250,000[.00] payable by December 31, 2021; and the remaining $2,600,000[.00] to be paid in four installments (of $650,000[.00]), each due on December 31 of the year, with the first payment due on December 31, 2022, the second payment due on December 31, 2023, the third payment due on December 31, 2024, and the final payment due on December 31, 2025. Any outstanding balance on these payments would be subject to [] simple interest of four percent. In exchange, Petroci would relinquish any right, claim, title, or interest in any stock or ownership of Dumond Chemicals, Inc., and Dumond, LLC. Further, the precious stones, sports memorabilia, and other disputed items placed in the storage unit would become the sole property of Petroci. Regarding the manner in which the payments would be treated for tax purposes, the parties indicated that tax experts would need to be consulted; however, they represented to the trial court that the [p]arties would work together "in good faith [] to determine the best lawful tax treatment of the settlement." The parties also represented to the trial court that they would draft a formal written settlement agreement that would include: (1) a release of all claims of the litigants and their affiliates; (2) a confidentiality provision; (3) a no disparagement provision; (4) a no admission of liability provision; and (5) "other items that are frequently in cases involving business divorce[ and] termination issues." The parties further agreed that Chanes would give a reference for Petroci to future prospective employers. The parties agreed that there would be a provision in the settlement agreement regarding remedies in the event of a breach of the agreement by either party. Finally, Dumond Chemicals, Inc.[,] would take out a life insurance policy on Chanes in an amount sufficient to cover the full balance of the settlement payment to Petroci, with the amount of the policy to decline over time as settlement payments are made to Petroci. Dumond Chemicals, Inc.[,] would be the owner of the policy, and the beneficiary, in the event of Chanes's death, would be Petroci. The

parties agreed that the cost of the insurance policy would be born[e] equally by the parties. Both Chanes and Petroci agreed to the terms of the settlement on the record and thanked Judge Mahon for his time and assistance. After these on-the-record representations, the trial court dismissed the jury.[3] Petroci then took possession of the disputed items in the storage unit.

The parties thereafter attempted to agree on a written settlement agreement and submitted competing drafts[.] Ultimately, they reached an impasse regarding several terms that were not stated on the court record, but which the Dumond Parties insisted be included in the settlement agreement. Specifically, the Dumond Parties insisted that the $3,600,000[.00] in settlement payments be treated as "wages" to [] Petroci for tax purposes. The Dumond Parties also insisted that the written settlement agreement include a provision which rendered Dumond Chemicals, Inc.'s obligation to pay the settlement amount voidable if any of its lenders objected to the settlement payment for any reason. The Dumond Parties further insisted that the settlement agreement include a three-year non-compete provision. The Dumond Parties additionally insisted on a provision which permitted Dumond Chemicals, Inc.[,] to reduce its payment obligations to Petroci by $1,100,000[.00] by making an early payment. The Dumond Parties also sought to include terms regarding requested representations, assurances to lenders, trade secrets, proprietary information, and dispute resolution. [] Petroci refused to accept these additional terms.

In October [of] 2021, the Dumond Parties filed a motion to dissolve the purported settlement. On December 17, 2021, the trial court entered an order denying the motion and directing the prothonotary to mark the matter as settled on both dockets.[4] On December 23, 2021, the [prothonotary[5]] entered [] judgment in

_____

[3] The trial court did not issue a contemporaneous order regarding the acceptance or adoption of the settlement agreement.

[4] In its order, the trial court "adopt[ed] the settlement placed on the record by the parties on April 8, 2021 as an [o]rder of [c]ourt." Trial Court Order, 12/17/21, at 1.

[5] Our review of the record indicates that these judgments were entered by the prothonotary upon praecipe from Petroci's counsel, discussed ***infra***.

favor of Petroci and against the Dumond Parties at both dockets. The Dumond Parties [appealed].

***Petroci I***, 304 A.3d at *1-2 (internal citations omitted).

Prior to and since ***Petroci I***, much has occurred that is relevant to our analysis here. While ***Petroci I*** was pending on appeal, the Dumond Parties did not pay Petroci the $750,000.00 due on July 31, 2021. On December 23, 2021, upon Petroci's praecipe for entry of judgment pursuant to Pa.R.Civ.P. 227.4, the prothonotary entered judgment ("Judgment #1") in favor of Petroci and against the Dumond Parties in the amount of $806,811.00. Judgment #1 consisted of the sum of the principal payment due on July 31, 2021 ($750,000.00), plus 4% interest on the entirety of the then-outstanding balance of $3,600,000.00 from July 31, 2021 through December 22, 2021.

The Dumond Parties then failed to make the next agreed-upon payment of $250,000.00 by December 31, 2021. Thereafter, on January 3, 2022, upon Petroci's second praecipe for entry of judgment, the prothonotary entered judgment ("Judgment #2") in the amount of $253,132.00. Akin to Judgment #1, this total was the sum of the principal payment due on December 31, 2021 ($250,000.00), plus 4% interest on the then-outstanding balance of $2,850,000.00 from December 23, 2021 through January 2, 2022.

On January 13, 2022, by agreement of the parties, the Dumond Parties "posted cash security in the amount of $1[,250,000.00] to effectuate a supersedeas of Judgments #1 and #2 [while ***Petroci I*** was] pending appeal." Motion to Impose Liability on Supersedeas Bonds, 6/17/24, at 3-4.

The Dumond Parties then, again, failed to make payment on the agreed-upon $650,000.00 by December 31, 2022. On January 17, 2023, upon Petroci's praecipe for entry of judgment, the prothonotary entered judgment ("Judgment #3") in the amount of $768,372.00. This total was the sum of the principal payment due on December 31, 2022 ($650,000.00), plus 4% interest on $2,850,000.00[6] from December 31, 2022 through January 16, 2023.

On January 23, 2023, the Dumond Parties posted a bond ("Bond #1"),[7] which replaced the January 13, 2022 cash security, in the amount of $1,250,000.00 as security for stay of execution pending appeal on Judgments #1 and #2. On February 2, 2023, the Dumond Parties posted a second bond ("Bond #2") in the amount of $780,000.00 as security for stay of execution pending appeal on Judgment #3.

On August 8, 2023, this Court affirmed the trial court's finding that an enforceable settlement agreement existed between the parties. *Petroci I*, 304 A.3d at *5-6. In doing so, we identified that:

> The parties manifested their assent to the terms of the settlement agreement and stated the material terms of that agreement on the record in open court. Specifically, the parties agreed to: the settlement amount; the dates of payment of the settlement

---

[6] Petroci admitted in his motion to impose liability on supersedeas bonds and appellate brief that this calculation was incorrect. The outstanding balance at the time was actually $2,600,000.00 because of the cash security posted for Judgments #1-2.

[7] While the parties refer to this as a supersedeas bond, we decline to do so for reasons discussed *infra*.

amount by Dumond Chemicals, Inc.[,] to Petroci; interest to accrue on any late payments; the surrender of company stock by Petroci; that Petroci would take possession of the disputed items; a confidentiality provision; a no disparagement provision; a no admission of liability provision; a reference from Chanes to prospective employers; and a life insurance policy on Chanes to secure the settlement payments. Indeed, both Chanes and Petroci stated their agreement to the terms of the settlement and profusely thanked Judge Mahon for his time and assistance. Moreover, based on the parties' clear manifestation of assent to the terms of this settlement agreement, the trial was terminated, the jury was discharged, the litigation was suspended, and Petroci took possession of the disputed items. Thus, the Dumond Parties' claim that there was no meeting of the minds that a settlement of the litigation had, in fact, occurred rings hollow. In short, there was an offer by Dumond Chemicals, Inc. (the settlement figure), acceptance of the offer by Petroci, and consideration (in exchange for the parties terminating their lawsuits, Dumond Chemicals, Inc. would pay Petroci the agreed upon sum of $3,600,000[.00]).

*Id.* at *5 (internal citation and paragraph break omitted). The Dumond Parties filed a petition for allowance of appeal from our decision in ***Petroci I*** on November 15, 2023.

While the petition was pending, the Dumond Parties then failed to make payment on the agreed-upon $650,000.00 by December 31, 2023. By stipulation of the parties, on January 11, 2024, the Dumond Parties agreed to increase the amount of Bond #2 by an additional $780,000.00 to stay execution on the December 31, 2023 payment pending appeal. Bond #2 was thus increased by a surety rider for $780,000.00 to a total of $1,560,000.00 on January 11, 2024.

On May 13, 2024, the Supreme Court of Pennsylvania denied the Dumond Parties' petition for allowance of appeal. ***Id.***, 318 A.3d 381 (Pa. 2024) (Table).

The Dumond Parties then failed to make payment on the agreed-upon $650,000.00 by December 31, 2023. On June 11, 2024, upon Petroci's praecipe for entry of judgment, the prothonotary entered judgment ("Judgment #4") in the amount of $757,490.41. This consisted of the sum of the principal payment due on December 31, 2023 ($650,000.00), plus 4% interest on $1,950,000.00 from January 17, 2023 through June 3, 2024. Also on June 11, 2024, upon praecipe to correct judgment, Judgment #3 was reduced from $768,372.00 to $757,704.00 to correct the amount of interest owed. *See supra* n.6.

On June 17, 2024, the court entered an order denying the Dumond Parties' motion for clarification and stay of recourse against supersedeas. In addition, in the same order, the trial court ordered the Dumond Parties to "fully comply with the terms of the settlement agreement within thirty (30) days of entry of this order or [Petroci] may proceed against [the Dumond Parties'] posted security and/or guaranty." Order, 6/17/24.

On June 17, 2024, Petroci filed a motion to impose liability on supersedeas bonds. The motion requested the trial court, pursuant Pa.R.A.P. 1734, impose liability on Bonds #1 and #2. In addition, Petroci argued that the Dumond Parties' surety was also liable for post-judgment interest on each judgment at the rate of 6% from the date of entry of each judgment until the dates of their payment. *See* Motion to Impose Liability on Supersedeas Bonds, 6/17/24, at 7-8 (citing Pa.R.A.P. 1734(b)). Petroci claimed that the parties had only agreed to 4% interest on the timely payment of outstanding

interest, and that post-judgment interest should also be assessed at a rate of 6%. On July 8, 2024, the Dumond Parties filed an answer to Petroci's motion, arguing, *inter alia*, that only the 4% rate applied.

On October 21, 2024, the trial court granted in part and denied in part Petroci's motion to impose liability on supersedeas bonds. In so doing, the trial court permitted Petroci to immediately seek payment of $2,356,811.00 from the posted supersedeas bonds, as well as future payments of principal and interest against the bonds and consistent with the order. The trial court, however, opined on the interest the Dumond Parties owed Petroci as follows:

> Petroci's computation of interest owed on defaulted principal payments, with the exception of the 12/22/2021 judgment of $806,811[.00] ($750,000[.00] plus 4% interest, from 7[/]31[/]2021 until 12/22/2021, of $56,811[.00]) are in error. Petroci is entitled to 4% simple interest on outstanding principal payments from the date that each individual principal payment is due, as set forth above, until the principal payment on each is made. Petroci's other calculations of interest are calculated from 12/31/2021 on a default of the entire $3.6 million, less any judgment amount. These calculations are not in accord with the settlement agreement negotiated by the parties and affirmed by the Superior Court. The parties negotiated a 4% simple interest default rate and therefore, Petroci is not entitled to a 6% default rate.

Trial Court Order, 10/21/24, at 2-3 (unpaginated).

Thereafter, on November 7, 2024, the Dumond Parties' surety paid Petroci $2,300,000.00 on behalf of the Dumond Parties and in satisfaction of the four principal payments due as of that date. That payment did not include payment on the accrued interest, which was still being disputed by the parties.

On November 20, 2024, Petroci timely appealed from the trial court's October 21, 2024 order. Petroci filed his Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal on December 23, 2024, claiming the trial court erred by: (1) concluding that interest does not accrue on outstanding balances until they are overdue; (2) concluding that he was not entitled to 6% interest upon the payments becoming overdue and/or the entry of judgments on them; and (3) failing to permit post-judgment interest to be calculated based upon the judgments entered against the Dumond Parties, including both principal and pre-judgment interest.

On December 26, 2024, while this appeal was pending, Petroci and the Dumond Parties filed in the trial court a stipulation and proposed order to satisfy judgments. Therein, the parties agreed that, based upon the methodology outlined in the trial court's October 21, 2024 order, the total interest owed on the $2,300,000.00 paid by the surety was $196,964.31. The parties also agreed that: (1) within two days of the stipulation and proposed order being entered, the Dumond Parties would instruct the surety to pay Petroci $196,964.31 for the accrued interest; (2) within five days of receipt of the interest payment, Petroci would cause Judgments #1-4 to be marked satisfied; and (3) upon Petroci marking the judgments as satisfied, the Dumond Parties' surety would be exonerated and released from further undertakings on the Bonds #1-2.

On February 10, 2025, the trial court adopted the parties' stipulation and proposed order to satisfy the judgments.[8]  The trial court issued its Pa.R.A.P. 1925(a) opinion on June 30, 2025.  Petroci raises the following issues for our review:

1. Did the trial court err in concluding that interest owed to [Petroci] on the outstanding balance of settlement payments did not begin to accrue until [the Dumond Parties] defaulted on the payments?

2. Did the trial court err in concluding that [Petroci] is not entitled to interest at the legal rate of 6% upon [the Dumond Parties'] default on settlement[] payments and/or the entry of judgments upon default?

3. Did the trial court err in failing to calculate post-judgment interest on the judgments entered against [the Dumond Parties], including both principal and pre-judgment interest?

Petroci's Brief, at 2-3.

Before proceeding, due to the complicated procedural posture of this matter, we are compelled to consider whether the trial court had jurisdiction to enter the October 21, 2024 order.  Instantly, the prothonotary entered the

_____

[8] The Dumond Parties had filed a notice of cross-appeal on December 4, 2024. On January 10, 2025, the Dumond Parties filed a Rule 1925(b) statement, identifying as error only the trial court's conclusion that the $58,811.00 in interest on the December 22, 2021 judgment was properly calculated based upon the terms of the parties' settlement agreement.  In their Rule 1925(b) statement, the Dumond Parties acknowledged that, if their pending stipulation and proposed order were entered by the trial court, their sole issue on cross-appeal would be resolved.  Following the entry of the trial court's February 10, 2025 order, the Dumond Parties withdrew their cross appeal.

relevant judgments after Petroci filed praecipes pursuant Pa.R.C.P. 227.4(2), which provides:

> In addition to the provisions of any Rule of Civil Procedure or Act of Assembly authorizing the prothonotary to enter judgment upon praecipe of a party . . ., the prothonotary shall, upon praecipe of a party: . . .
>
> . . .
>
> (2) enter judgment when a court grants or denies relief but does not itself enter judgment or order the prothonotary to do so.

Pa.R.C.P. 227.4(2). However, if a court has not specifically adjudicated rights of parties or directed the prothonotary to enter judgment, the prothonotary's authority to enter judgment must have express basis in statute or rule of court, and the prothonotary's authority is confined to the circumstances prescribed by statute or rule. *See Commonwealth v. Abdul-Salaam*, 996 A.2d 482, 487 (Pa. 2010) (citing *Thompson v. Cortese*, 398 A.2d 1079, 1081 (Pa. Cmwlth. 1979)). Where a prothonotary lacks authority to enter a judgment, the judgment entered is "void, a nullity, and lacking in legal effect." *Linde v. Linde*, 222 A.3d 776, 780 (Pa. Super. 2019).

Here, the prothonotary did not have the authority to enter Judgments #1-4 because the parties reached a settlement agreement, which did not include a provision for the entry of judgment. Accordingly, there was no judgment to be entered or relief to be granted. *See Petroci I*, 304 A.3d at *5 ("[B]ased on the parties' clear manifestation of assent to the terms of this settlement agreement, the trial was terminated, the jury was discharged, the

- 12 -

litigation was suspended, and Petroci took possession of the disputed items"). Therefore, Judgments #1-4 are void, nullities, and lacking in legal effect. ***See Linde***, ***supra***.

The "supersedeas bonds" posted by the Dumond Parties are likewise invalid for several reasons. Petroci claims the bonds were posted pursuant to Pa.R.A.P. 1731(a), which provides:

> **(a) General rule.** Except as provided by subdivision (b), **an appeal from an order involving solely the payment of money shall**, unless otherwise ordered pursuant to this chapter, **operate as a supersedeas upon the filing with the clerk of the lower court of appropriate security in the amount of 120% of the amount found due by the lower court** and remaining unpaid. Where the amount is payable over a period of time, the amount found due for the purposes of this rule shall be the aggregate amount payable within 18 months after entry of the order.

Pa.R.C.P. 1731(a) (emphasis added).

A supersedeas bond is "a judicial bond designed to 'supersede' the enforcement of the trial court's judgment. It is a contract in which the surety obliges itself to pay a final judgment rendered against the principal." ***Humphreys v. SureTec Insurance Company***, 311 A.3d 1175, 1188–89 (Pa. Cmwlth. 2024) (citations and footnote omitted). For example, a supersedeas bond is properly filed under Rule 1731(a) when a party appeals

- 13 -

from a trial court's monetary judgment. *See Linde*, 222 A.3d at 779–81 (supersedeas bond filed after appeal from $5,392,000.00 judgment).[9]

Here, the trial court did not enter an order directing the payment of money. Likewise, because the Judgments entered by the prothonotary were nullities, they, too, provide no basis for the entry of supersedeas bonds pursuant Rule 1731(a). Therefore, while the parties agreed to the posting of Bonds #1-2, referred to them as "supersedeas" bonds, and believed them to operate according to our Rules of Appellate Procedure, the Bonds were not and did not operate as supersedeas bonds under Rule 1731(a).[10]

Based on this conclusion, the bonds were not the proper subjects of a motion to distribute under Rule 1734, which provides, in relevant part:

_____

[9] This Court's review of our Commonwealth's laws governing supersedeas in *Leoni v. Leoni*, 153 A.3d 1073 (Pa. Super. 2017), provides further insight into the proper context for the entry of a supersedeas bond. There, we noted that

> [p]rior to the enactment of Pa.R.A.P. 1735, the effect of supersedeas was controlled by statute[.] The original Act[,] which was codified by 12 P.S. § 1139, provides in [part], as follows: [] "Relating to the entry of bail upon an appeal to the [S]upreme or [S]uperior [C]ourt, *from an order, judgment, or decree directing the payment of money*, and the release of the appellant's real estate from the lien of said judgment, order, or decree pending the appeal and re-entry of judgment, if judgment be affirmed.

*Leoni,* 153 A.3d at 1081–82 (citing P.L. 103, No. 61 (12 P.S. § 1139)) (emphasis added). We summarized that "the plain language of [the original Act] clearly indicates that the Act applied to appeals from judgments or orders directing the payment of money[.]" *Id.* at 1082.

[10] "A hog in a silk waistcoat is still a hog." 1 C.H. Spurgeon, *The Salt-Cellars* 26 (2009).

- 14 -

**(b) Terms of bond.** A supersedeas bond shall be conditioned for the satisfaction of the order if it is affirmed or if for any reason the appeal is dismissed, or for the satisfaction of any modification of the order and in either case costs, interest[,] and any damages for delay that may finally be awarded.

**(c) Liability of Sureties.** If security is given under this chapter in the form of a bond, stipulation[,] or other undertaking in the nature of a bond, with one or more sureties, each surety submits himself to the jurisdiction of the lower court and irrevocably appoints the clerk of the lower court as his agent upon whom any papers affecting his liability on the bond or undertaking may be served. This liability may be enforced on application in the lower court without the necessity of an independent action. The application and such notice of the application as the lower court prescribes may be served on the clerk of the lower court, who shall forthwith mail copies to the sureties if their addresses are known.

Pa.R.A.P. 1734(b). Here, because the parties did not properly enter supersedeas bonds pursuant Rule 1731, Rule 1734(b) does not apply. Therefore, Petroci's motion to impose liability on supersedeas bonds was not properly brought pursuant to our rules of civil procedure

This brings us to the underlying trial court order. Therein, the court summarized the judgments entered against the Dumond Parties and the Bonds posted by the Dumond Parties, reviewed how much the Dumond Parties owed Petroci at the time of the order and the amounts to come due under the forthcoming agreed-upon payments, determined that Petroci was then entitled to $2,356,811.00 total, and ordered that Petroci "may immediately seek payment of $2,356,811.00 from the posted supersedeas bonds[, and] may also seek future payments of principal and interest against the bonds consistent with this order." Trial Court Order, 10/21/24, at 1-3. However,

because the trial court order rests upon a house of cards—null and void judgments, ineffectual "supersedeas" bonds, and a motion lacking a proper procedural foundation—we are constrained to vacate the court's order.

When playing board games in one's own home, if the players do not like the rules of the game, they may simply invent their own and play under "house rules." In our legal system, however, that is not the case. Here, the Rules of Civil Procedure and Common Law provide recourse where a party has failed to comply with the terms of a settlement agreement. In particular, we point the trial court and the parties to Pa.R.C.P. 229.1, which provides the procedures to be followed by a party aggrieved by the breach of a settlement agreement. *See id.* at (d); *see also Raker v. Bar-B-Q Pit, Inc.*, 179 A.3d 576, at *1 (Pa. Super. 2017) (court entered judgment upon motion to enforce settlement agreement); *Camp Horne Self Storage LLC v. Lawyers Title Insurance Corp.*, 150 A.3d 999, 1002 (Pa. Super. 2016) (discussing Rule 229.1). Alternatively, as noted by the trial court in its Rule 1925(a) opinion, Petroci could have filed a common law claim for a breach of the settlement agreement. *See* Trial Court Opinion, 6/30/25, at 3 (unpaginated); *see also Toppy v. Passage Bio, Inc.*, 285 A.3d 672 (Pa. Super. 2022) (discussing claim for breach of settlement agreement brought by former employee).

The parties in this case failed at every turn to proceed in accordance with the law, choosing instead to play under "house rules." Thus, where the underlying "judgments" are null and void, and the "supersedeas" bonds were

- 16 -

not subject to the imposition of liability under our rules of civil procedure, the trial court lacked the authority to enter its order imposing such liability.

The foregoing analysis notwithstanding, we recognize that the parties and trial court have been proceeding under a shared understanding and, in doing so, have agreed for the Dumond parties' Surety to pay Petroci $2,300,000.00 in satisfaction of the four principal payments due as of November 7, 2024, and, based on the methodology outlined in the trial court's October 21, 2024 order, for the Surety to pay Petroci $196,964.31 for the interest on that sum.[11]   Because of our prior finding of the existence of a settlement agreement between the parties in **Petroci I**, and because of the actions taken by the parties and the trial court pursuant a shared understanding of the proceedings below, we affirm the payments made thus far and will not disturb what the parties have agreed to up until this point.

We render no decision on the issues raised by Petroci, namely, what interest rate applies under the settlement agreement and when interest began to accrue under the settlement agreement.  Instead, we leave that to the trial court to consider if the issue is properly before it pursuant our Rules of Civil Procedure or the Common Law avenues set forth above.  Accordingly, we

_____

[11] This interest payment was to be made two days after the trial court entered the parties' December 26, 2024 stipulation, which the trial court did on February 10, 2025.  While the Dumond Parties' brief references that payment having been made, we do not have record evidence before us of that payment, or of the last two principal payments which have come due in the meantime, being made.

affirm in part, the trial court order dealing with the principal amounts due, and remand for further proceedings consistent with this memorandum.[12]

Order vacated. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/1/2026

_____

[12] Our review of the authorities addressing the relevant sections of our Rules of Appellate Procedure, Rules 1731-1751, revealed no cases wherein judgments were entered and supersedeas bonds were posted pursuant to missed payments under a settlement agreement. Accordingly, we consider our prior silence on the matter supportive of our disposition.